UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CASEY WILLIAMS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 11-1511** |
| **TERRY HINES, WARDEN** | * | **SECTION: "B"(1)** |

## AMENDED REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. Section 2254(e)(2). For all of the following reasons, **IT IS HEREBY RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### I.      Procedural Background

Petitioner, Casey Williams, is a state prisoner incarcerated in the Pine Prairie Correctional Center, Pine Prairie, Louisiana.  On December 2, 2004, Williams was convicted by a jury in the 24th Judicial District Court, Parish of Jefferson, of one count of simple rape, in violation of La. R.S.

14:43.[1] He was subsequently sentenced to serve a term of fifteen years, at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served.[2]  Williams filed an appeal and the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence on March 14, 2006.  State v. Williams, 926 So.2d 665 (La. App. 5th Cir. 3/14/06).[3] A subsequent request for a writ of certiorari/review to the Louisiana Supreme Court was denied on October 13, 2006.  State v. Williams, 939 So.2d 360 (La. 10/13/2006).[4]  Petitioner did not file for review with the U.S. Supreme Court.

On December 21, 2007, petitioner filed a counseled application for post-conviction relief with the state district court.[5]  Relief was denied on July 8, 2008.[6]  A request for review was filed with the Louisiana Fifth Circuit Court of Appeal on November 28, 2008, also with counsel.  The Fifth Circuit denied relief on November 10, 2010.[7]  A counseled request for review of this decision was then filed with the Louisiana Supreme Court on December 13, 2010 and post-marked December

---

[1]State Rec. vol. 4 at p. 96, Jury Verdict Form. Williams was originally charged with forcible rape, a violation of La. R.S. 14.42.1.

[2]State Rec. vol. 4, p. 119; vol. 7, p. 851.

[3]A copy of this decision can be found in State Rec. vol. 2.

[4]A copy of this decision can be found in State Rec. vol. 2.

[5]State Rec. vol. 3 at Tab 3.

[6]State Rec. vol. 3, Tab 3.

[7]State Rec. vol. 3, Tab 12, contains a copy of the Louisiana Fifth's Circuit's unpublished opinion in Williams v. Copes, Writ No. 08-WR-1232 (La. App. 5th Cir. 11/10/2010).

10, 2010.[8]  The Louisiana Supreme Court denied relief on June 3, 2011. See Williams v. Copes, 63 So.3d 1017 (La. 6/3/11).[9]

On June 26, 2011, with counsel, Williams filed a petition for writ of habeas corpus with this court,[10] bringing the following claims:  1) that he was denied his constitutional right to present a defense under the Fifth and Fourteenth Amendments to the United States Constitution, as well as his Sixth Amendment right to counsel, when the trial judge curtailed defense counsels' questioning and arguments throughout the course of his trial; 2) that he was denied his right to due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution when the state committed prosecutorial misconduct; 3) that he was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution in that trial counsel's "numerous incidents" of ineffectiveness led to a "manifest absence of counsel";[11] and, 4) that he was denied his right to Due Process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, when he was denied the right to post-conviction DNA testing under La. C.Cr.P. art. 926.1.

_____

[8]State Rec. vol. 3, Tab 12-A.

[9]A copy of this decision is located in State Rec. vol. 3, also at Tab 12-A.

[10]Fed. Rec. Doc. 1.

[11]Williams has presented a myriad of ineffective assistance of counsel claims under five general categories, faulting counsel for: (1) failing to follow-up witness questioning and objections; (2) failing to object to inappropriate comments; (3) failing to prepare for trial or to present a defense; (4) failing to file post-trial motions; and (5) failing to appeal a pre-trial evidentiary ruling.

The State responds that petitioner is untimely in bringing his federal habeas petition.  For the following reasons, the court finds the petition to be untimely filed but alternatively recommends that the claims be DENIED on the merits.

## II.   Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. §2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of the time for seeking review. See 28 U.S.C. § 2244(d)(1)(A) (West 2013), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220.  In this case, Williams' conviction became final, for federal limitations purposes, on January 11, 2007, after the 90 day deadline had passed for filing a writ of certiorari with the U.S. Supreme Court.[12]  See Sup.Ct.R. 13(1); see also Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Habteselassie v. Novak, 209 F.3d 1208, 1209 (10th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000).  Under a plain reading of the statute, Williams then had one year within which to file his federal habeas petition, or a deadline of January 11, 2008.  Williams did not file his federal habeas petition with this court until June 26, 2011.[13]  Thus, his challenge to his 2004 conviction must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. § 2244(d)(2).  Under that statutory provision, "[t]he time during which a properly filed application for State

_____

[12]The 90 days commenced with the Louisiana Supreme Court's denial of certiorari on October 13, 2006 and ended on January 11, 2007 with the expiration of the deadline for filing a request for writ of certiorari with the U.S. Supreme Court.

[13]Fed. Rec. Doc. 1.

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

As the previously-mentioned procedural history indicates, Williams filed his first state post-conviction application on December 21, 2007.  In order for a state post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. Pace v. DiGuglielmo, 544 U.S. 408, 413–14 (2005); Williams v. Cain, 217 F.3d 303, 306–07 n. 4 (5th Cir.2000); Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir.1999), reh'g denied, 196 F.3d 1259 (5th Cir.1999). Williams' post-conviction filing was "properly filed" in that it was timely filed within the two years allowed for filing state post-conviction pleadings, see La. C. Cr. P. art. 930.8, and was filed in the parish in which Williams was convicted. See La. C. Cr. P. art. 925.  The post-conviction application thus interrupted the federal one year limitations period after an expiration of 343 days, leaving 22 days remaining before the federal filing deadline.

The trial court denied William's post-conviction application on July 8, 2008. Pursuant to the Louisiana Courts of Appeal Uniform Rule 4-3, Williams then had thirty days to file his request for review of that post-conviction application with the Louisiana Fifth Circuit Court of Appeal, or until August 7, 2008.[14]  However, Williams instead filed a Notice of Intent to File Writs with the trial

---

[14]Rule 4-3, provides, in pertinent part:

> The judge who has been given notice of intention [to apply for a writ to the court of appeal]  as provided by Rule 4-2 shall immediately set a reasonable return date within which the application shall be filed in the appellate court. The return date in civil cases shall not exceed 30 days from the date of notice, as provided in La. C. Civ. P. art. 1914. In criminal cases, unless the judge orders the ruling to be reduced to writing, the return date shall not exceed 30 days from the date of the ruling at

court requesting a return date of August 20, 2008.[15]  On August 4, 2008, the trial court granted Williams' request but inexplicably set the return date for *September 19, 2008.[16]*  A Louisiana trial court's setting of a return date for writs later than thirty days is an implicit extension of the return date.  Dixon v. Cain, 316 F.3d 553, 555-56 (5th Cir. 2003). Therefore, this court assumes the September 19, 2008 date was a valid return date.[17]

However, counsel for Williams did not file the request for supervisory writs on or before September 19, 2008.  The record reflects that on October 29, 2008, counsel instead filed a "Motion

---

issue. When the judge orders the ruling to be reduced to writing in criminal cases, the return date shall not exceed 30 days from the date the ruling is signed. In all cases, the judge shall set an explicit return date; an appellate court will not infer a return date from the record.

Upon proper showing, the trial court or the appellate court may extend the time for filing the application upon the filing of a motion for extension of return date by the applicant, filed within the original or an extended return date period. An application not filed in the appellate court within the time so fixed or extended shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault. The application for writs shall contain documentation of the return date and any extensions thereof; any application that does not contain this documentation may not be considered by the appellate court.

[15]State Rec. vol. 3, Tab 6. Counsel's request for an extension of the return date was based upon the fact she had not received the trial court's July 8th, 2008 ruling until July 21, 2008. Thus counsel sought thirty days from the date of *receipt* of the ruling.

[16]State Rec. vol. 3, Tab 7.

[17]The Louisiana Supreme Court has held that when the trial judge fixes a return date more than thirty days from the date of the ruling and the applicant files within the time fixed by the judge but more than thirty days after the date of the ruling, the application shall be considered timely; the applicant should not be penalized for being misled by the judge's order. Barnard v. Barnard, 675 So. 2d 734 (La. 1996).

to Reinstate Appellate Review Rights and For Extension of Time in Which to File a Writ".[18] Therein, counsel asserted that she did not receive the ruling from the trial court setting the return date for September 19, 2008 because that notice was sent to counsel's former address rather than the address counsel had been using since January 2008. The record reflects that the notice was timely sent, however, to petitioner Williams at the South Louisiana Correctional Center in Basile, Louisiana and counsel noted in her October 29, 2008 motion that she had been contacted "recently" by Williams' family about the deadline.[19] On November 3, 2008, the trial court granted defendant's motion, re-setting the return date for November 12, 2008.[20]

The first question to be addressed is did Williams' state post-conviction writ application cease to be "pending" as a result of counsel's failure to timely file the writ application by September 19, 2008?  A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' " Carey v. Saffold, 536 U.S. 214, 219–20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review is unavailable under Louisiana's procedures.'") (quoting Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir.1999)); see also Melancon v. Kaylo, 259 F.3d 401, 405 (5th Cir. 2001).

Williams' post-conviction writ was no longer "in continuance" as of September 19, 2008 because, after that date, the trial judge had no authority to extend the deadline under Rule 4-3.  See

---

[18]State Rec. vol. 3, Tab 8.

[19]State Rec. vol. 3, Tab 7, Trial Court Order evidences that counsel was served at old address and petitioner was served in prison. State Rec. vol. 3, Tab 8. Motion to Reinstate Appellate Review Rights contains counsel's reasons for delay in filing.

[20]State Rec. vol. 3, Tab 9.

Carter v. Rhea, 785 So.2d 1022 (La. App. 4th Cir. 2001)(Trial court has no authority to grant a delay for filing an application for supervisory writs once the 30-day period from the ruling at issue has expired, thus application filed 4 months after the deadline set by the trial court was untimely on its face.)  Therefore, William's post-conviction application ceased to be "pending" at least as of September 19, 2008, and an additional 39 days ran against petitioner.  Since petitioner only had 22 days left before the federal limitations period would expire, his one year federal time limitation expired on October 13, 2008.[21]

It is worth noting that, once the trial court granted its "unauthorized" extension for filing writs until November 12, 2008, defense counsel still did not file the writ by November 12, 2008 but instead filed with the district court a "Motion for Second Extension of Time in Which to File a Writ" on November 20, 2008.[22]  Counsel claimed that there was a delay in mailing the trial court's ruling of November 3, 2008 by the Clerk of the Court. Counsel provided evidence that the ruling had actually been mailed on November 12, 2008, the date the court had set for the return.[23]  The trial court then granted the request for an extension and set the return date for November 22, 2008.[24]

---

[21]Petitioner only had 22 days left of his federal limitations period and that time ran as of October 11, 2008. Since that date was a Saturday, the court gives him the benefit of October 13, 2008, a Monday, within which to file. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir.1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

[22]State Rec. vol. 3, Tab 10.

[23]State Rec. vol. 3, Tab 10, Exhibit ""A".

[24]State Rec. vol. 3, Tab 11.

Finally, Williams filed his counseled writ application with the Louisiana Fifth Circuit on November 22, 2008, 40 days too late to meet the federal deadline.[25]

The Louisiana Fifth Circuit Court of Appeal reviewed Williams post-conviction application and ruled on November 10, 2010.[26]  Noting Williams' procedural history and the late filing pursuant to Louisiana Uniform Rules of the Courts of Appeal, Rule 4-3, the court stated, "Under a strict interpretation of our rules this writ would be considered untimely. However, relator has relied on the extension granted by the trial court.  We will, therefore, in the interest of justice, grant review of relator's application."

The record is clear that the Louisiana Fifth Circuit Court of Appeal found the post-conviction writ to be technically untimely.  The mere fact that a state court considered an application "on the merits" is not itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules.  See Carey v. Saffold, 535 U.S. 214, 226 (2002) (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way").  That the state appellate court in this case ultimately addressed the merits of the writ application does not alter the fact that the state post-conviction application ceased to be pending as of September 19, 2008, thus allowing the federal limitations period to continue to run.  Williams'

---

[25]State Rec. vol. 9, Tab 16.

[26]The state appellate court also considered whether William's prior writ applications filed with that court should be reviewed in accordance with State v. Cordero, 993 So.2d 203 (La. 2008). The court determined that, because those previous applications had been reviewed by a randomly-selected panel of three judges, Cordero relief was unwarranted. See State Rec. vol. 3, Tab 12, Williams v. Copes, Writ No. 08-WR-1232 (La. App. 5th Cir. 11/10/2010)(unpublished).

federal habeas petition was, therefore, untimely filed and is barred from federal review unless there is a basis for application of equitable tolling of the federal statute of limitations.

### III.   Equitable Tolling

The Supreme Court recently affirmed that the AEDPA "statute of limitations defense ... is not jurisdictional." Holland v. Florida, – U.S. –, –, 130 S.Ct. 2549, 2560 (2010).  As such, the federal statute of limitations is customarily subject to equitable tolling. Id.  "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." Rivera v. Quarterman, 505 F.3d 349 (5th Cir. 2007), citing Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998).

The Holland court adopted the established standard for determining whether equitable tolling applies: "[T]hat a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 2562 (quoting Pace, 544 U.S. at 418). See also  Davis, 158 F.3d at 810.  "'Equitable  tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), quoting Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996).   What constitutes an "extraordinary circumstance" necessarily involves a "fact-intensive" inquiry.  Holland, 130 S.Ct. at 2565. "In order for equitable tolling to apply, the applicant must diligently pursue his §2254 relief." Id.  Moreover, the petitioner bears the burden of establishing entitlement to equitable tolling in the AEDPA context.  Philips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000).

In this instance, counsel for petitioner has made no specific argument in favor of equitable tolling, despite receiving the State's response asserting a time-bar defense.  Additionally, this Court knows of no reason that would support equitable tolling of the statute of limitations.[27]  Because petitioner is entitled neither  to further statutory tolling nor equitable tolling, his federal application for habeas corpus relief had to be filed on or before October 13, 2008.  Because his federal application was not filed until June 26, 2011, it is untimely.[28]

In an abundance of caution, this court alternatively addresses the merits of Williams' claims.[29]

_____

[27]Although not argued by Williams, the Court notes that Williams' counsel's lack of notice of the state trial court's August 4, 2008 ruling extending the deadline to file a post-conviction writ until August 20, 2008 is not an "extraordinary circumstance" which would warrant equitable tolling under Holland, 130 S.Ct. 2565. Counsel specifically requested the August 20, 2008 extension but neglected to comply with the requested deadline or even check on the status of the extension request. Additionally, once counsel was aware of the untimely state filing, she did nothing whatsoever to protect Williams' federal habeas rights. "Garden variety excusable neglect" by counsel is insufficient to warrant equitable tolling. Id. at 2564.

[28]Recently, the U.S. Supreme Court has held that a habeas petitioner asserting a credible claim of actual innocence may overcome AEDPA's statute of limitations. McQuiggin v. Perkins, – U.S. –, 2013 WL 2300806 (May 28, 2013). To establish "actual innocence", the petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Id. at *12, citing Schlup v. Delo, 513 U.S. 298, 316 (1995).  In this case, Williams' has not argued that his untimeliness should be excused based upon "actual innocence" and McQuiggin was not decided when this petition was filed. Regardless, the court finds, for the reasons elaborated upon in "Claim D" of this Report and Recommendation relative to Williams' quest for DNA testing, that Williams' showing of "actual innocence" is insufficient to meet McQuiggin's  demanding standard.

[29]The State did not, alternatively, address the merits of the claims raised but instead reserved its rights to do so if the time-bar defense was rejected.  However, because the pleadings and the state court record are sufficient to address the claims raised, the Court did not require additional briefing by the State.

IV.     **Standards of Review on the Merits**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  Since Williams' petition was filed on June 26, 2011[31] it is governed by §§ 2254(d) and 2254(e) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Green v. Thaler, 699 F.3d 404, 411 (5th Cir. 2012), citing Holland v. Anderson, 583 F.3d 267, 271-72 (5th Cir. 2009).  Section 2254(d) provides that a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the" state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. citing 28 U.S.C. § 2254(d).  A decision is "'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States' . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S.

---

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[31]Fed. Rec. Doc. 1.

362, 412-13, 120 S.Ct. 1495, 1523-24, 146 L.Ed.2d 389 (2000) (quoting 28 U.S.C. § 2245(d)(1)) (first alteration in original).  A decision "involve[s] an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 412-13.  "We review pure questions of law under the 'contrary to' standard of sub-section (d)(1), mixed questions of law and fact under the 'unreasonable application' standard of sub-section (d)(1), and pure questions of fact under the 'unreasonable determination of facts' standard of subsection (d)(2)."  Simmons v. Epps, 654 F.3d 526, 534 (5th Cir. 2011), cert. denied, – U.S. – , 132 S.Ct. 2374 (2012) (quoting Murphy v. Johnson, 205 F.3d 809, 813 (5th Cir. 2000)).

Further, under § 2254(e)(1), a state court's factual findings are "presumed to be correct." This presumption may only be rebutted by "clear and convincing evidence."  Green, 699 F.3d at 411, citing  28 U.S.C. § 2254(e)(1).

### V.    Factual Background

The following statement of facts is adopted from the Louisiana Fifth Court of Appeal decision on direct appeal, State v. Williams, 926 So. 2d 665 (La. App. 5th Cir. 3/14/06).[32]

> At trial, B.V. testified that she was 23-years-old.[33]  In November of 2003, B.V., a resident of Memphis, was staying with friends who lived on Hennessey Street, not far from the French Quarter. On the evening of November 8, 2003, B.V. went to Checkpoint Charlie's, a bar in the French Quarter to listen to a band at the bar. She drank nine

---

[32]A copy of this decision is located in State Rec. vol. 2.

[33]The victim is identified by initials to protect her identity. See La. R.S. 46:1844(W)(3).

or ten beers while listening to music and left when the band finished playing, between 4:00 and 5:00 a.m. She left the bar to locate a bus stop to return to Hennessey Street.

While B.V. was looking for the bus stop, a man, later identified as the defendant, pulled alongside her in a red truck. He struck up a conversation with her. B.V. offered to pay the defendant to bring her home. The defendant accepted the money and began driving. They engaged in small talk, and the defendant stopped at a store. Thereafter, the defendant resumed driving. It was not until they reached the interstate that B.V. realized that something was amiss. B.V. told the defendant that he was going the wrong way, but the defendant replied that he knew where he was going. The defendant proceeded on the interstate, heading toward the Mississippi River.

When B.V. again questioned the defendant about their direction, the defendant replied that he would let her out or take her where she wanted if she agreed to perform oral sex on him. B.V. refused, but the defendant told her that she had to do what he said or else she wasn't getting out of the truck. They ultimately reached the Westbank, where they passed a tall, round hotel. The defendant kept driving on the elevated Expressway. Eventually they reached the ground level of the road, but the defendant continued driving. B.V. didn't remember the defendant stopping at any traffic lights on the ground level. The defendant crossed the Huey P. Long Bridge and kept driving on to Jefferson Highway.

At some point, the defendant slowed the vehicle. B.V. attempted to get out of the truck, but the defendant grabbed B.V.'s left arm, preventing her from escaping. The defendant unfastened his pants and put a condom on his erect penis. He stopped the vehicle in the parking lot of a warehouse. He then shoved B.V. against the passenger's side door and pulled her pants to her ankles.[34] He pushed her legs over her shoulders, held her arms and legs and put his penis inside her vagina. B.V. struggled to get away and sustained a swollen lip in the struggle. B.V. was crying and told the defendant "no." When the defendant did stop, he removed the condom, which he threw out of the window while driving. The defendant made a U-turn heading back towards the Huey P. Long Bridge. As the truck slowed,

---

[34]B.V. testified that she was not wearing underpants.

14

B.V. opened the door and jumped out of the truck. She went to the median to try to flag down a car.

Between 7:30 a.m. and 8:00 a.m., Sylvia Roberts was on her way to work at Oasis Horticultural on Jefferson Highway. She saw B.V. sitting in the median. B.V. was crying and Ms. Roberts stopped to see if she needed help. B.V. told Ms. Roberts that she did need help because she had just been raped behind nearby warehouses. Ms. Roberts asked B.V. to meet her across the street. While B.V. was crossing the street, a red truck stopped. According to B.V., the defendant begged her to get back in the truck. B.V. told him to get away from her. Ms. Roberts observed the confrontation, and said that B.V. began screaming "This is him. This is him." The red truck then drove away. B.V. ran towards Ms. Roberts, who dialed 911. B.V. kept repeating the license plate numbers to Ms. Roberts.

After the police arrived, Ms. Roberts observed the red truck traveling east on Jefferson Highway. Ms. Roberts alerted the police to the truck. Deputy Christy Clement of the Jefferson Parish Sheriff's Office saw the witness signaling to her. Deputy Clement pursued the truck, which was about 10 car lengths in front of her unit. Deputy Clement activated the unit's lights and sirens and commanded the driver, later identified as the defendant, to pull over. The defendant did not comply and continued driving for approximately one-half mile. Ultimately, the defendant stopped at a gas station at Eagle Street and Claiborne. Deputy Clement ordered the defendant out of the vehicle, read him his rights, and advised him that he was under investigation for rape. Although the defendant initially remained silent, the defendant later told the police that B.V. was in his truck, but denied that he had sex with her. Deputy Clement returned to Jefferson Highway to interview the victim. After the victim told Deputy Clement what had transpired, Deputy Clement brought her to the location where the defendant was stopped, and she immediately identified the defendant and the truck. Thereafter, Deputy Clement took B.V. to Lakeside Hospital, where she was examined by Dr. Kathryn Wild, an expert in obstetrics and gynecology. On the victim's left arm, Dr. Wild found bruises, which she believed were recently sustained. She also noted that the victim's upper lip was swollen and

that there was an abrasion on the underside of the victim's upper lip.[35] Dr. Wild found no trauma to the victim's vagina, and she noted that the victim's genital area was clean-shaven. Dr. Wild found a pubic hair inside of the victim's vagina. Dr. Wild opined that the hair had been inside the victim for less than 24 hours.

The record indicated that the hair was lost and that it was not submitted for testing. Sharon Lawrence, the supervising nurse in charge of recovered evidence in the rape examination, testified that her usual procedure would have been to place the hair in a box, which would have been turned over to the police. Ms. Lawrence acknowledged that the hair was not listed as having been placed in the box. Ms. Lawrence said she did not know what happened to the hair.

An examination of the defendant's truck, which had a manual transmission, yielded a barrette that B.V. identified as the one that fell out of her hair in the struggle with the defendant. While doing a trace lift in the truck, in which an adhesive substance is applied to fabric, the police found an eyelash and a pubic hair. DNA testing revealed that the eyelash did not match the victim and the hair was not submitted for testing.[36] The police searched a four-block area of Jefferson Highway for the condom that B.V. said the defendant had discarded, but did not find it.

At trial, B.V. acknowledged that she and others were arrested for public intoxication and interfering with a police investigation on November 3, 2003 and that she pled guilty as charged. She also acknowledged that she pled guilty to DWI in September of 2004.

The defendant rested without putting on any evidence or calling any witnesses.

----

[35]It is noted that B.V. said that she burned her lip when she was smoking a cigarette while on the phone with 911. It is unclear whether the abrasion Dr. Wild noted on the underside of B.V.'s lip was the cigarette burn.

[36]Detective David Spera explained that the hair was not submitted for testing because the victim's genital area did not have hair. As such, the hair could not have linked the victim to the defendant's truck.

VI.   **Analysis**

   **A. Denial of the Right to Present a Defense**

Williams argues, in his first claim for relief, that the trial judge curtailed defense counsels'[37] questioning and arguments throughout the course of his trial, thus denying Williams his right to present a defense under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  Williams argues that, although the state courts procedurally barred this claim, this court should address the merits since the state bar was "improperly applied".[38]

The denial of the right to present a defense was first raised by Williams in a counseled post-conviction application filed with the trial court.[39]  In the decision denying relief, the state district judge agreed with the state's defense that the issue was procedurally barred pursuant to La. C. Cr.

---

[37]Williams was represented at trial by two lawyers, Attorneys Owen and LeBlanc.

[38]Since additional briefing was not requested of the State, the court sua sponte raises and addresses the issue of whether petitioner is procedurally barred on any of his claims.  A federal habeas court has the discretion to raise a procedural default sua sponte. Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir.2006); Magouirk v. Phillips, 144 F.3d 348, 357-58 (5th Cir.1998). In the instant case, it is appropriate for the Court to raise that defense. First, the State did not expressly waive the defense of procedural default. Second, and more importantly, Williams clearly has notice of the possible application of a procedural bar to his claims as he argues against the application of such a bar. Additionally, because petitioner will have notice of the application of the bar by virtue of this Report and Recommendation and the opportunity to respond in an objection to the United States District Court Judge, petitioner is not prejudiced by the assertion of the defense. See Prieto, 456 F.3d at 519; Magouirk, 144 F.3d at 359.

[39]The post-conviction application was decided by 24th Judicial District Court Judge, Kernan Hand rather than 24th Judicial District Court Judge Martha Sassone, who had presided over the trial of Williams' crime.

P. art. 930.4(C)[40] and stated, "The court agrees, and specifically finds that this claim, known to the petitioner and to counsel, should have been raised on direct appeal but was not."[41] Before the Louisiana Fifth Circuit on supervisory writs, Williams' counsel argued that the trial court had failed to order petitioner to state the reasons for his failure to urge the claim on appeal and had failed to make a determination as to whether the failure to do so was "excusable", pursuant to La. C. Cr. P. art. 930.4(F).[42] However, Williams never presented the reasons for his procedural default of the claim to the Louisiana Fifth Circuit.   The Fifth Circuit ruled:

> While the statute indicates that the court "shall order the petitioner to state reasons for his failure" before dismissing an application for said failure, the Louisiana Supreme Court has opined that "the required Uniform Application for Post Conviction relief . . . requires an inmate filing an application for post-conviction relief to 'explain why' he may have 'failed to raise [a particular] ground' in earlier proceedings (footnote omitted).   State *ex rel*. Rice v. State, 99-0496 (La. 11/12/99), 749 So.2d 650.   "Proper use of the Uniform Application thus satisfies the requirements of La.C.Cr. P. art. 930.4(F) without the need for further filings, formal proceedings, or a hearing." Id.[43]

_____

[40]La. C. Cr. P. art. 930.4 (C) provides: If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

[41]State Rec. vol. 3 at Tab 4, Trial Court Order dated 7/08/08.

[42]La. C. Cr. P. art. 930.4(F) provides, in pertinent part, "If the court considers dismissing an application for failure of the petitioner to raise the claim ... on appeal, .... the court shall order the petitioner to state reasons for his failure.  If the court finds that the failure was excusable, it shall consider the merits of the claim.

[43]The Louisiana Uniform Application for post-conviction relief specifically states, at the end of each claim for relief, "If you failed to raise this ground in the trial court prior to conviction, *on appeal* or in a prior application, explain why".   Thus, had petitioner followed the application's format, the reason for failing to appeal his claim of denial of the right to present a defense would have been explained. See Sup. Ct. Rules, App. A. Additionally, La. R.S. 926 (D) requires the use of the Uniform Application for Post-conviction Relief.

The court went on to find it "noteworthy" that counsel had again not presented reasons for failing to bring the issue of "denial of the right to present a defense" on direct appeal when it appealed the trial court's ruling. Stating that a "bare statement" that counsel was ineffective was insufficient, the court found Williams had failed to present an "objective basis" for setting aside the trial court's ruling and thus denied relief.[44] The Louisiana Supreme Court subsequently denied relief without reasons, and therefore the Louisiana Fifth Circuit's decision is the last reasoned opinion on the issue.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997);  Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.   "Where the last reasoned state court opinion on a federal claim explicitly imposes a procedural default, there is a presumption that a later decision rejecting the same claim without opinion did not disregard  the procedural bar and consider the merits." Lott

_____

[44]State Rec. vol. 3, Tab 12, Williams v. Copes, Writ No. 08-WR-1232 at pp. 5-6.

v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996), citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Here, the last reasoned decision of the Louisiana Fifth Circuit relied on La. C. Cr. P. art. 930.4(C) to dismiss Williams' claim. In his subsequent request for review of that decision to the Louisiana Supreme Court, that court likewise denied the claims, presumptively resting on the Fifth Circuit's decision below.

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Glover, 128 F.3d at 902. State procedural rules enjoy a presumption of adequacy when the State court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise. Id.; Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

Here, the state appellate court clearly relied upon the 930.4(C) procedural bar in denying relief. Moreover, Williams makes no showing that La. C. Cr. P. art. 930.4(C) is not regularly or even-handedly applied.[45] Therefore, the bar imposed by La. C. Cr. P. art. 930.4(C) is both independent and adequate to bar review of the merits of Williams' claim.

"Procedural default, standing alone, does not always justify a dismissal of the habeas corpus petitioner's claims. Procedural default may be excused upon a showing of cause and prejudice or

---

[45]The Louisiana Supreme Court has recently applied the bar in State ex rel. Matos v. State, 98 So.3d 303 (La. 2012), as well as earlier in Roy v. Cain, 792 So.2d 3 (La. 2001); State ex rel. Rice v. State, 749 So.2d 650 (La. 1999); and, State ex rel. Baylis v. Maggio, 464 So.2d 1370 (La. 1985).

that application of the doctrine will result in a fundamental miscarriage of justice." Magouirk v. Phillips, 144 F.3d 348, 359 (5ᵗʰ Cir. 1998), citing Coleman, 501 U.S. at 748-50. To establish "cause", Williams must demonstrate that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule. Murray v. Carrier, 477 U.S. at 488. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997), citing Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982). Williams does not present this court with any reason to excuse the procedural default of his claim.[46] Instead, he simply asserts that the state courts erred in applying the state procedural bar.

"A basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground." Smith v. Johnson, 216 F.3d 521 (5ᵗʰ Cir. 2000), citing Barnes v. Thompson, 58 F.3d 971 (4th Cir.1995). In such a circumstance, "[t]he federal court may only inquire into whether cause and prejudice exist to excuse that default, not into whether the state court properly applied its own law". Barnes, 58 F.3d at 974. Additionally, an inquiry for "cause" should not be confused with an inquiry into the default determination. Id. Thus, absent a showing of either cause and prejudice or a fundamental miscarriage of justice, the state court's finding of procedural bar is conclusive. Smith, 216 F.3d at 523. See also, Rowell v. Dretke, 398 F.3d 370, 375 (5ᵗʰ Cir. 2005)( "[i]t is not the role

---

[46]To the extent Williams may claim that his attorney erred in failing to raise the claim on direct appeal, "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Murray, 477 U.S. at 486.

of the federal habeas court to reexamine state-court determinations of state-law questions."); Johnson v. Cain, 215 F.3d 489, 494 (5th Cir.2000) (holding that the district court erred in concluding that the state court improperly applied its procedural rules). Accord, Walker v. Warden Louisiana State Penitentiary, 19 F.3d 15, 1994 WL 93289, at *1 (5th Cir.1994) (unpublished) (per curiam) (holding that it would be improper for a federal habeas court to second-guess the state court's compliance with its procedural rules). Based on this jurisprudence, Williams' contention that the state courts erroneously applied a state procedural bar to his case does not excuse his procedural default. Williams' failure to establish "cause" therefore bars this court from addressing his claim unless he can show that a fundamental miscarriage of justice would result if the procedural bar were applied.

In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).  The burden is on Williams to show "actual innocence".  Murray, 477 U.S. at 495–96. To overcome the procedural hurdle that Williams created by failing to first properly present his constitutional claim to the Louisiana courts on appeal, Williams must produce "new reliable evidence" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  House v. Bell, 547 U.S. 518, 556 (2006). See also, United States v. Torres, 163 F.3d 909, 912 (5th Cir.1999)(citing Bousley v. United States, 523 U.S. 614, 624 (1998))(To establish actual innocence, petitioner must show that, "in light of all the evidence ... it is more likely than not

that no reasonable juror would have convicted him.") Additionally, " 'actual innocence' means factual innocence, not mere legal insufficiency." <u>Torres</u>, 163 F. 3d at 912.  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Glover</u>, 128 F.3d at 903.

Williams' only claim that arguably implicates a claim of actual innocence is his claim that he should have obtained additional DNA testing of the contents of the rape kit.  As is further elaborated upon under "Claim D" in this Report and Recommendation and also within the context of the claim of ineffective assistance of trial counsel for failing to request additional DNA testing, <u>see</u> "Claim C, subpart 3", Williams cannot show that additional DNA testing would have established his actual innocence.  Since Williams cannot meet the heavy burden of showing a fundamental miscarriage of justice would occur, his claim that he was denied a right to present a defense is procedurally barred from federal review.

### B.  Denial of the Right to Due Process Based on Prosecutorial Misconduct

Williams, through counsel, next argues that his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated when the state committed prosecutorial misconduct.  Specifically, Williams argues that the prosecution made remarks which "personally attacked defense counsel, as well as improperly boosted the credibility of the victim-witness in the case."[47]

Williams raised this claim to the trial court in post-conviction proceedings and once again, the court denied the claim, relying upon a failure to comply with state procedural rules.  First, the

---

[47]<u>See</u> Fed. Doc. 1-2 at p. 24.

trial court found that Williams had failed to contemporaneously object (pursuant to La. C. Cr. P. art. 841) to the prosecutions' remarks. Second, the trial court found that Williams' claim was barred by La. C. Cr. P. art. 930.4(B) in that he failed to raise the claim prior to conviction.[48] On appeal of the lower court's decision, the Louisiana Fifth Circuit found that Williams' claim was barred by La. C. Cr. P. art. 841 and that the Louisiana Supreme Court had recently reiterated, in State v. Campbell, 983 So.2d 810 (La. 2008), that where no contemporaneous objection was made, the issue was not preserved for review.[49]

Williams counters that the Louisiana contemporaneous objection rule is not "immutable" and exceptions can be made. Williams brings to this court's attention older state jurisprudence than the case of State v. Campbell, 983 So.2d 810 (La. 2008). However, Williams ignores the fact that it is not the province of this court to engage in an analysis of the "correctness" of the state law that applies here. See Rowell, 398 F.3d at 375. Rather, the issue for a federal habeas court is whether a state procedural rule that has been applied to bar a merits review of a claim is adequate and independent.[50]

_____

[48]La.C.Cr. P. art. 930.4(B) provides: "If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."

[49] State Rec. vol. 3 at Tab 12, Williams v. Copes, Writ No. 08-WR-1232.

[50]Counsel for Williams also attempts to argue that this court should consider the federal standard of review when considering issues that were not contemporaneously objected to at trial. Counsel asserts that upon a showing of "plain error" that affects a petitioner's "substantial rights", this court should review the claim. See page 24 of Fed. Rec. Doc. 1-2. However, the "plain error" standard set forth in U.S. v. Jones, 484 F.3d 783 (5th Cir. 2007), one of the cases cited by counsel, applies to an error on direct appeal in a federal criminal proceeding that was not objected to at trial and is simply inapplicable to a federal habeas court reviewing a claim barred by state procedure on collateral review.

Here, it is clear the procedural rule applied is "independent" as the state trial court's and the state appellate court's judgment "clearly and expressly" indicated that it was independent of federal law and rested solely on a state procedural bar.  See Amos, 61 F.3d at 338.  Moreover, both the "adequacy" and "independence" of the contemporaneous objection rule has already been determined by the U.S. Fifth Circuit.  See Steward v. Cain, 259 F.3d 374 (5th Cir. 2001)(Last reasoned state court judgment rejecting petitioner's claim was based upon contemporaneous objection rule, an adequate and independent state ground); and, Duncan v. Cain, 278 F.3d 537 (5th Cir. 2002) (It is well-settled that the contemporaneous-objection rule is an independent and adequate state procedural ground"). Therefore, this court finds that Williams is procedurally barred from federal review of this claim unless he can show "cause" for his default and prejudice attributable thereto.  Magouirk, 144 F.3d at 359; Coleman, 501 U.S. at 748-50; Fisher v. Texas, 169 F.3d 295, 301 (5th Cir. 1999).

Williams makes no argument relative to showing "cause" for his default and prejudice attributable thereto in order to excuse his procedural default.[51] Thus his claim of prosecutorial misconduct is barred from federal review unless he can establish that a fundamental miscarriage of justice would occur if this court were to bar the claim. Finley, 243 F.3d at 220, citing Murray, 477 U.S. at 495.

Williams fails to make a credible showing of "actual innocence" as required to demonstrate a fundamental miscarriage of justice. Williams must produce new reliable evidence that shows that

_____

[51]Williams does argue, in his third substantive claim for relief, that his attorney was ineffective in failing to preserve the issue for review by contemporaneously objecting to the prosecution's remarks/misconduct.  As this Court concludes, in its discussion under "Claim C, Subpart 2" of this Report and Recommendation, Williams cannot show that counsel was ineffective nor that he would have been successful on appeal of the claim if the issue had been preserved.

it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." House, 547 U.S. at 556.  In this case, Williams was not exonerated by the DNA evidence. DNA testing was attempted but no semen or seminal fluid was present as a condom was worn during the rape.  Moreover, Williams cannot show that additional DNA testing would produce favorable or exculpatory results.[52] Accordingly, Williams' cannot establish his actual innocence to excuse his procedural default and his claim of prosecutorial misconduct is not subject to this court's habeas review.

### C. Denial of the Right to Effective Assistance of Counsel

Petitioner next asserts that he was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution in that trial counsel's "numerous incidents" of ineffectiveness led to a "manifest absence of counsel." Williams brings five different categories of ineffective assistance of counsel claims, each to be resolved in turn.

The issue of ineffective assistance of counsel is a mixed question of fact and law. See Gregory v. Thaler, 601 F.3d 347 (5th Cir. 2010), citing Briseno v. Cockrell, 274 F.3d 204, 206-08 (5th Cir. 2001); Virgil v. Dretke, 446 F.3d 598, 604 (5th Cir. 2006).  Therefore, petitioner is entitled to habeas relief on a claim of ineffective assistance of counsel only when the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1). The United

---

[52]See additional discussion under "Claim C, Section 3."

States Supreme Court's standard for evaluating claims of ineffective assistance of counsel is found in Strickland v. Washington, 466 U.S. 668 (1984).

In Strickland, the Supreme Court established a  two prong test for evaluating claims of ineffective assistance of counsel: a defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. 466 U.S. 668. With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688.  There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065.  Additionally, a defendant must overcome the presumption that the challenged action might be considered to be sound trial strategy.  Id.

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. It is clear that even "professionally unreasonable errors by counsel do not warrant setting aside a conviction if the error had no effect on the judgment". Larsen v. Maggio, 736 F.2d 215, 217 (5th Cir. 1984).

The burden of demonstrating prejudice rests on the defendant. Strickland , 466 U.S. at 693. The defendant must demonstrate that an alleged error actually had an adverse effect on the defense. "The hypothetical or theoretical 'might have beens' at a trial do not justify the issuance of a Writ. Rather, the petitioner must demonstrate that the 'might have beens' *would have been* important enough to affect the proceedings' reliability." Larsen, 736 F.2d at 218 (emphasis provided).  If the

defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test.  Strickland, 466 U.S. at 697.

### 1. Failure to follow-up witness questioning and objections

First, Williams claims trial counsel was ineffective in that counsel failed to follow up on witness questioning and make necessary objections. Specifically, Williams points to an incident where defense counsel was questioning the details of the victim's story regarding how Williams had managed to put a condom on with one hand while he was driving his vehicle and preventing the victim from fleeing the vehicle. The victim had testified that Williams put the condom on when he was slowing and pulling off the road, but the car was not stopped; that he used one hand to put the condom on but she didn't remember which hand; and, that she tried to get out of the car when he finally stopped the car and after he had the condom on but Williams grabbed her arm. Despite this testimony, counsel continued to ask her for more details until the court stopped the line of questioning, removed the jury and inquired why counsel was continuing his line of questioning when the answers had already been given by the victim.  Counsel explained that he was trying to get the victim to provide more details because he felt that putting the condom on in the manner she had described was a "nearly impossible act".  The trial judge then told counsel to save that comment for closing argument. At this point, counsel indicated he was ready to move on.[53] Williams now complains that counsel "surrendered" and "simply gave up" and ineffectively curtailed his questioning of the victim.

---

[53]See State Rec. vol. 6 at pp. 529-537, Trial Transcript.

Having reviewed the pertinent sections of the trial transcript, the court finds no evidence that Williams was prejudiced by counsel's decision to change course in his questioning. The "prejudice" showing of <u>Strickland</u> requires that the errors made by counsel were "so serious as to deprive the defendant of a fair trial ... whose result is reliable." <u>Id</u>. at 687. The defendant bears the burden of showing that there was a reasonable probability, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694 (emphasis added). This prejudice inquiry of the <u>Strickland</u> analysis asks whether or not counsel's deficient performance "renders the result of the trial unreliable or the proceeding fundamentally unfair." <u>Williams</u>, 529 U.S. at 393 n.17.

In this case, the victim had already answered counsel's questions.  The trial court's statement that counsel should wait for closing argument to argue that the victim's account of Williams' actions was "impossible" as described by the victim was well-taken. Williams cannot show that counsel would have been able to get the victim to accept his version of the facts if questioning had continued. Counsel's decision to move on when admonished by the court to do so was trial strategy that this court cannot second-guess.

Williams also complains that another  "surrender" by defense counsel occurred during the state's redirect of the victim when the following exchange took place:

> <u>The State</u>: "Now, when you got into the car, did you say, 'You know, I'm on my way to be raped' " —
>
> <u>Mr. LeBlanc</u> (defense co-counsel): Objection, your Honor.  She has already testified to what she said or didn't say.
>
> <u>Mr. Mary (prosecutor)</u>:   Now, Judge, one lawyer, one witness.
>
> <u>The Court</u>: Right. Overruled.

Williams argues that Attorney Owen, his co-counsel that was the attorney responsible for cross-examining the victim, should then have objected but did not.

The Louisiana Fifth Circuit Court of Appeal addressed Williams complaint by stating that the objection was made by the prosecution because the lawyer who objected was not the attorney who had already questioned the victim.  The court noted, however, that the victim did not respond to the question, thus no prejudicial testimony was elicited. Moreover, Williams' complaint that he was prejudiced because counsel failed to object and preserve the issue for review was without merit because the state conceded in its response to the post-conviction claim in the trial court that the objection had, in fact, been made.[54]

Williams cannot show prejudice from counsel's failure to object as required by <u>Strickland</u> and is not entitled to relief on this claim.

### 2. Failure to object to inappropriate comments

Williams cites to various pages of the trial transcript, complaining that his attorney failed to object and thus allowed "improper and inadmissible testimony" to be admitted. He provides the court with no specifics as to what testimony was wrongly elicited nor any argument as to why the referenced testimony was inadmissible or prejudicial.  The court will not speculate as to counsel's argument.[55]    Having read the referenced pages of the transcript, however, the court finds no evidence that Williams was denied a fair trial.  Williams thus fails to show that the state court's

---

[54]State Rec. vol. 3 at Tab 12, <u>Williams v. Copes</u>, Writ No. 08-WR-1232 at p. 8.

[55]Counsel references pages 82-85, 145, 146, 155-157, and 200 of the trial transcript.

denial of his claim of ineffective assistance relative to counsel's "general" failure to object was contrary to Strickland.

Next, Williams complains that his trial counsel failed to object to "inappropriate state comments throughout the trial."[56] He asserts that failure to object denied him the right to appellate review on that issue.[57] Petitioner can only prevail on his claim by showing that his attorney's failure to object was both deficient and prejudicial, pursuant to Strickland, 466 U.S. 668.  Specifically, Williams must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.  Failure to establish either prong of Strickland will result in denial of relief to Williams. Id. at 693.

Williams asserts that the prosecutor made the following prejudicial statements during closing arguments:  He accused the defense of  "bastardizing" the facts[58]; shamed the defense for "questioning the victim's emotional reaction" in court[59]; called defense counsel "despicable"[60], insulting to the jury's intelligence[61] and indicated defendant's version of the facts was "borderline assinine."[62]  Also, during closing arguments, Williams contends the state wrongly argued that the

---

[56]Fed. Rec. Doc. 1-2, Memorandum at p. 32.

[57]Fed. Rec. Doc. 1-2, Memorandum at p. 34.

[58]See State Rec. vol. 7 at p. 762 and 764.

[59]State Rec. vol. 7 at p. 762.

[60]State Rec. vol. 7 at p. 762.

[61]State Rec. vol. 7 at p. 763.

[62]State Rec. vol. 7 at p. 769.

victim was telling the truth, thereby "implying that she (the victim) was believable."  Williams'
contends that the state courts erred in denying his claim that his trial attorney's failure to object to
these comments constituted ineffective assistance.

The state appellate court reviewed Williams' complaints about these comments made by the
prosecutor and found that the prosecutor had not exceeded the wide latitude given in choosing
closing argument tactics under state law.[63]  The question before this court is whether the state court's
denial of Williams' claim involved an unreasonable application of controlling U.S. Supreme Court
law, as set forth in Strickland.

First, Williams cannot establish that counsel's failure to object to these comments was the
result of deficient representation rather than a strategic choice.  An attorney's decision on trial tactics
and strategy cannot be the basis of constitutionally ineffective assistance of counsel "unless it is so
ill chosen that it permeates the entire trial with obvious unfairness." Pape v. Thaler, 645 F.3d 281
(5th Cir. 2011).  By interrupting the prosecution's closing argument at various points, defense counsel
may have only served to highlight those comments for the jury.

Furthermore, many of the prosecutor's closing comments were responsive to the statements
made by the defense counsel in closing argument.  During closing, defense counsel had questioned
the victim's emotional response to the crime, questioned her credibility and the way she continued

---

[63]State Rec. vol. 3 at Tab 12, Williams v. Copes, Writ No. 08-WR-1232. The Louisiana Fifth
Circuit also noted that specific page references had not been provided by Williams regarding where
in the transcript the alleged comments could be found. This court located each challenged comment
and has designated the specific page where the comments can be found in footnotes 56-60, herein.

"sticking with her story," a story the defense asserted was concocted.[64] Additionally, defense counsel's closing went beyond the scope of the evidence presented on several occasions, such as hinting that the victim was intoxicated or suggesting that a pubic hair was found in the victim's vagina because she had sex with someone else.[65]   In this context, the state's rebuttal to the defense closing was not improper but rather served to emphasize that defense counsel's argument was not supported by the evidence.

Nor did the prosecutor impermissibly "vouch" for the victim's credibility but rather he explained that the victim's story had remained consistent despite having to be re-told many times to medical personnel and law enforcement. The comments complained of also did not misstate the evidence and were not pervasive.

Notably, the jury was given jury instructions that the only evidence the jury was to consider was the testimony of witnesses and exhibits such as writings and physical objects which the court had permitted the parties to introduce. The jury was told that they were the exclusive judges of the facts and credibility and, specifically instructed to "restrict yourselves to the evidence that you have heard on the trial of this case, or lack of evidence."[66] These instructions were curative of any problems which may have occurred during closing argument.[67]   Clearly, even had counsel objected

---

[64]State Rec. vol. 6 at p. 743.

[65]State Rec. vol. 7 at pp. 760, 747-748.

[66]State Rec. vol. 7, Jury Charges at pp. 778-780.

[67]The U.S. Supreme Court set forth the standard by which relief could be obtained for improper prosecutorial remarks in Darden v. Wainwright, 477 U.S. 168 (1986).  Under Darden, a petitioner must establish that the remarks " 'so infected the trial with unfairness as to make the

to the prosecution's remarks thus preserving the issue for appeal, Williams would not have been successful in overturning his conviction based on this issue. Williams thus fails to show prejudice, as required by Strickland.

Williams complains about the way the prosecution conducted its re-direct examination of the victim, specifically arguing that the state attempted to prejudice the jury when it asked questions such as, "Did you ever at any time say, 'Hey, complete stranger, can you stop raping me so I can take some notes about the inside of this truck?' " Williams asserts that counsel was ineffective in failing to object to this type of questioning.

Review of the record shows that, again, the state's questions were in response to the cross-examination of the victim by the defense. The prosecutor's questions were intended to elicit an explanation from the victim of why she did not pay attention to details of her surroundings during the time that she alleged she was being raped. Even assuming counsel should have objected to this line of questioning, Williams fails to show that objecting to the prosecutor's comments would have resulted in a more favorable outcome at trial or on appeal. See Strickland, 466 U.S. at 2055-56.

Williams additionally complains that, during voir dire, his counsel failed to object to comments made by the prosecution relative to the defendant's exercising his right not to testify. "The freedom of a defendant in a criminal trial to remain silent 'unless he chooses to speak in the unfettered exercise of his own will' is guaranteed by the Fifth Amendment and made applicable to state criminal proceedings through the Fourteenth". Carter v. Kentucky, 450 U.S. 288, 305 (1981),

---

resulting conviction a denial of due process.' " Id., at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The prosecutor's comments complained of here do not meet the Darden standard.

citing Malloy v. Hogan, 378 U.S. 1 (1964).  If a defendant chooses not to testify, the Fifth Amendment generally prohibits the prosecutor from making adverse comments about the defendant's decision not to testify.  See Griffin v. California, 380 U.S. 609, 611-12 (1965)(Prosecutor's comments that the defendant "has not seen fit to take the stand and deny or explain" the circumstances of the crime violated Fifth Amendment).

On post-conviction proceedings, the state trial court addressed Williams' claim that his attorney was ineffective in failing to object to the prosecutor's comments made during voir dire regarding the defendant's right not to testify.[68] Specifically, the court found that Williams' counsel "exceeded the constitutional minimum" and that Williams had failed to show prejudice from counsel's claimed errors.[69] The state appellate court similarly denied relief.[70]

Although the substantive claim of prosecutorial misconduct was procedurally barred on direct appeal, the state appellate court made the following factual findings, which are supported by the record and entitled to deference by this court:

> The remarks singled out by the defendant were made immediately
> after the prosecutor's explanation of the presumption of innocence

---

[68]The issue of prosecutorial misconduct for making comments referencing Williams' failure to testify and the issue that his attorney was ineffective in failing to object to these comments was first raised in Williams' direct appeal. However, the state appellate court pre-termitted all issues of ineffective assistance, finding it more appropriate for post-conviction proceedings.  The court also procedurally barred the substantive prosecutorial misconduct claim for failure of counsel to lodge an objection.  The issue was raised again in post-conviction proceedings. See State Rec. vol. 2 for a copy of the decision on direct appeal and State Rec. vol. 3, Tab 12 for Louisiana Fifth Circuit Court of Appeal decision on post-conviction.

[69]State Rec. vol. 3 at Tab 4.

[70]State Rec. vol. 3 at Tab 12, Williams v. Copes, Writ No. 08-WR-1232.

and during the prosecutor's discussion of a defendant's right not to testify. The prosecutor began his comments by telling the jury that the defendant did not have to testify and that the jury could not hold it against him. The prosecutor then asked the following question, which contained the first set of the comments the defendant challenges:

> Just by a show of hands, would any of y'all say it would take fifteen thousand pounds of chains to keep me off the stand if I was accused of a crime? Any of you all?

The record reflects that affirmative indications were given.

The next comment occurred when the prosecutor was interviewing one of the jurors who equivocated when asked if she could accept the concept of a defendant's asserting his right not to testify:

> THE STATE:
>
> Okay. Well, let's talk about it. What (sic) you're unsure about?
>
> JUROR:
>
> If I was innocent I would be so righteously angry that I was accused.
>
> THE STATE:
>
> Okay. And that's alright. But you understand what the law is. The law is that you can't hold it against them.
>
> JUROR:
>
> Yeah, I know.
>
> THE STATE:
>
> Alright. Even though you feel that way and you say wild horses couldn't keep me off the stand, nothing can prevent me from getting up there and claiming my innocence; you know, I would crawl over the table to

36

get to the stand when presented with the opportunity.
That's you.

JUROR:

Uh huh. (Affirmative response).[71]

Viewing the prosecutor's comments within the context of jury voir dire, it is evident the prosecutor was not intending to get the jury to draw an adverse inference from Williams' failure to testify.  Rather, the prosecutor was attempting to weed out those jurors who could not follow the law with regard to Williams' right to assert his Fifth Amendment privilege and the requirement that the exercise of that right not be held against him.

Additionally, the trial court gave a jury instruction which informed the jury that they could not consider the fact that the defendant had not testified at trial or "permit it to raise a presumption of guilt against him."[72]  The jury is presumed to have followed the instructions as given. Woodward v. Epps, 580 F.3d 318, 329 (5th Cir. 2009). Accordingly, Williams fails to show prejudice from the prosecutor's comments and thus fails to sustain his burden under Strickland of showing his counsel was ineffective in failing to object.

### 3. Failure to prepare for trial or present defense

Williams next complains that his attorney was ineffective in that he "failed to prepare for trial or present a defense." First, he claims that his attorney made a request that the jury be allowed to view Mr. Williams' truck, where the crime occurred, but "it is not clear whether this request was

---

[71]State v. Williams, 926 So.2d at 11; See also State Rec. vol. 4 at p. 225, Transcript of Jury Voir Dire.

[72]State Rec. vol. 7 at p. 780.

filed in writing, and it does not appear to have been taken up in argument or at hearing."[73] Petitioner contends that, since size and layout of the truck cab was at issue in this case, "there can be no strategic reason to fail to make this request."[74]

The state appellate court addressed this issue in post-conviction proceedings, finding that defendant's counsel decision not to have the jury view the crime scene (i.e., the truck) was, in fact, a matter of trial strategy.[75]

The record shows that, although the jury did not get a first-hand view of Williams' truck, the jury did view photographs of the truck.[76]  Additionally, defense counsel was able to cross- examine Deputy Goodwin, who photographed the truck, and was able to get the deputy to concede that the truck cabin area was small enough that the deputy was able to capture the entire cabin standing outside the truck with a photograph.[77]  Moreover, it is entirely conceivable that the photographs best portrayed the truck's cabin as being small and cramped, thus supporting the defense's argument that the crime could not have occurred inside the truck, as the victim alleged.  If so, counsel's decision to forgo the jury's viewing of the actual truck would have been a strategic decision rather than ineffective assistance.

---

[73]Fed. Doc. 1-2 at p. 35.

[74]Fed. Doc. 1-2 at p. 35.

[75]State Rec. vol. 3, Tab 12, Williams v. Copes, Writ No. 08-WR-1232 at p. 10.

[76]State Rec. vol. 6 at pp. 653-54 (Deputy Goodwin identifies photos he took of truck); p. 687 (photos of truck admitted into evidence).

[77]State Rec. vol. 6 at p. 677.

The court need not speculate, however. The burden is on Williams to demonstrate that he was prejudiced by counsel's decision not to have the jury view the truck where the rape allegedly occurred.  He has not done so. Having failed to show the state court's decision to deny this claim of ineffective assistance was contrary to Strickland, Williams is not entitled to relief on this claim. See 28 U.S.C. § 2254(d)(1).

Williams also contends that trial counsel was ineffective in that he failed to conduct an adequate investigation of the victim and failed to request DNA testing of the rape kit.  Relative to the investigation of the victim, Williams claims that the victim had been sexually assaulted three times before but trial counsel failed to investigate these prior allegations and the outcomes of each allegation.[78] Williams alleges that, if any of the prior allegations of sexual assault had been determined to be false, Louisiana law would have allowed that evidence to be admitted despite the general inadmissibility under state law of evidence of a victim's past sexual behavior.

However, the deficiency in Williams' claim is that he has provided no evidence whatsoever that any prior allegation of sexual assault by the victim in this case was ever proven untrue. Williams failed to present this court with any evidence of prejudice, i.e., that, but for counsel's failure to investigate the victim's past, admissible, relevant evidence would have been presented to the jury which would have resulted in a more favorable outcome for him at trial, he cannot prevail on this claim.

---

[78]The record shows that the State provided pre-trial notice to the defense that the victim had previously been the victim of sexual assault. See State Rec. vol. 2 at p. 86.

Williams also claims that counsel should have requested a DNA test of the rape kit but failed to do so. Williams specifically contends that the entire contents of the rape kit should have been tested, not just the vaginal swabs.

The Louisiana Fifth Circuit Court of Appeal addressed this issue in post-conviction proceedings, stating that the trial court found that the DNA samples were tested by both the state and the defendant before trial and there were no "unknown samples" which could be subjected to additional DNA testing.[79]  Moreover, the Louisiana Fifth Circuit indicated that, although DNA testing was conducted with no match proven, the State had established through expert testimony that there could be sexual activity without sperm or seminal fluid being found, such as when a condom is used.  Thus the lack of DNA did not exonerate the defendant of the crime. The court thus concluded that there was no evidence of deficient performance by defense counsel in failing to request "complete" DNA testing.[80]

The record establishes that the victim testified at trial that Williams raped her in his truck while wearing a condom. He then subsequently discarded the condom as they were traveling along

---

[79]With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review. Brown v. Dretke, 419 F.3d 365, 371 (5th Cir. 2005). The petitioner must show that the factfinder's decision was objectively unreasonable, "a substantially higher threshold" than showing the decision was merely "incorrect or erroneous." Blue v. Thaler, 665 F.3d 647, 654–55 (5th Cir. 2011). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Furthermore, under 28 U.S.C. § 2254(e), the factual determinations of the state court "shall be presumed to be correct." Thus, the state court's finding that there were no "unknown samples" "shall be presumed to be correct" by this court.  Williams has the burden of rebutting the presumption of correctness by "clear and convincing evidence." Wood, 558 U.S. at 301. He fails to do so.

[80]State Rec. vol. 3, Tab 12, Williams v. Copes, Writ No. 08-WR-1232 at p. 10.

the roadway but it was never found.[81]   At trial, the State established that a rape kit was used to collect evidence from the victim, including any nail scrapings, head hair, pubic hair (the victim had none), blood and saliva samples, and evidence obtained through use of vaginal swabs.[82] Dr. Wild, a physician in Obstetrics/Gynecology, testified that she conducted a rape examination of the victim, noted that the victim's pubic area was clean-shaven, yet she discovered a pubic hair inside the victim's vagina.  Dr. Wild opined that, since the vagina was self-cleansing, a pubic hair would not have stayed inside the vagina for more than 24 hours.[83] Although Dr. Wild indicated that the pubic hair was added to the rape kit, the rape kit did not list a pubic hair as being contained in the kit and no pubic hair was found when the rape kit was presented to the forensic scientist for analysis.[84]

The State also presented the expert testimony of Christine Krogos, a forensic scientist and serology expert, who testified that her analysis of the vaginal swabs taken from the victim and the resulting slides showed no signs of spermatozoa and no signs of semen. Since the preliminary test for spermatozoa and semen was negative, no additional DNA testing was done by Ms. Kogos.[85]

---

[81]State Rec. vol. 5 at pp. 491-93.

[82]State Rec. vol. 6, Testimony of Sharon Lawrence, Registered Nurse; Testimony of Dr. Kathryn Wild, pp. 557-59.

[83]State Rec. vol. 6, Testimony of Dr. Kathryn Wild at pp. 563-66.

[84]State Rec. vol. 6, Testimony of Christine Kogos, Forensic Scientist, at p. 701.

[85]State Rec. vol. 6 at pp. 705.

Based upon the record and evidence, Williams' trial counsel could not have requested testing of the pubic hair for DNA as it was lost.[86]  Additionally, with no spermatozoa or semen present, no DNA was available for testing from the vaginal swabs.[87] Although petitioner claims additional DNA testing should have been performed, such a claim is purely speculative.  Williams fails to show that additional testing would have yielded favorable, exculpatory evidence for him to use at trial. See e.g., Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 202)(Petitioner has the burden to show "what results the scientific tests would have yielded" and that those results would, in fact, have been favorable to him).  Moreover, the lack of DNA evidence neither incriminated nor exonerated petitioner for the charged crime.[88] Williams fails, therefore, to prove that counsel's failure to request additional DNA testing prejudiced his case, as required under Strickland.

Williams also claims trial counsel's investigation was insufficient in that the State provided notice that the victim had sexual intercourse with another individual approximately four days prior to the date of the crime yet trial counsel failed to investigate this individual as a possible source of the pubic hair found in the victim's vagina.

---

[86]Since the jury was aware that the pubic hair was lost or mishandled, thus preventing DNA testing, the lack of DNA testing could not be construed as either incriminating or exculpatory.

[87]See also, Reliagene Lab Report, State Rec. vol. 3.

[88]The court also notes that counsel was able to argue to the jury during closing argument that there was no DNA evidence that linked the defendant to the rape and that the one pubic hair which could have exonerated Williams as a suspect was "conveniently" lost.  Counsel thus strategically appealed to the jury based upon the lack of state's evidence linking him to the crime.  See State Rec. vol. 6 at pp. 738, 740-742.

Williams ignores, however, the state appellate court's finding, on post-conviction review, that evidence of the victim's past sexual behavior would have been inadmissible under state law. See Louisiana Code of Evidence art. 412. Additionally, to the extent petitioner argues that an investigation into the victim's past sexual partner would have established that the pubic hair found by Dr. Wild belonged to someone other than the defendant, Dr. Wild's testimony established that a pubic hair would not have remained in the vagina past 24 hours.[89]  Moreover, since the pubic hair was lost, petitioner offers no explanation of how another individual would have been determined to be the source of the pubic hair. Thus, Williams cannot establish that counsel was deficient in any way nor that counsel's failure to investigate the victim's past sexual history prejudiced him at trial. Williams fails to show that the state court applied Strickland in a manner that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1).

### 4.  Failure to file post-trial motions

Williams asserts that, since his trial attorney failed to object to the inclusion of simple rape as a legislatively-responsive verdict to the charge of forcible rape, his conviction could not be reversed on direct appeal unless the evidence supported the charged offense (forcible rape) rather than the offense of which he stands convicted (simple rape). Williams contends that he was,

---

[89]State Rec. vol. 6 at p. 566.

therefore, subjected to a "higher standard of review on direct appeal" when he raised his claim of insufficient evidence.[90]

Once again, to prevail with his ineffective assistance of counsel claim, Williams must show both that his attorney's failure to object to the simple rape responsive verdict was deficient conduct and that, but for counsel's unprofessional error, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Williams cannot show that counsel's decision not to object to the inclusion of simple rape as a responsive verdict was deficient conduct. Under Louisiana's system of responsive verdicts, there are benefits to both the prosecution and to the defense. The prosecution may benefit from a responsive verdict when the jury is given an alternative to acquittal when the evidence does not establish an essential element of the charged offense.  The defense, however, also may benefit from a responsive verdict when the jury chooses an alternative to the "drastic extremes of a charged offense and a verdict of not guilty". See Beck v. Alabama, 447 U.S. 625, 633 (1980) (Permitting jury to find a defendant guilty of any lesser included offenses is a benefit to both prosecution and the defense).  See also, State ex rel. Elaire v. Blackburn, 424 So.2d 246, 248 (La. 1982)(same).

In this case, Williams cannot prove that his attorney's decision not to object to the inclusion of the responsive verdict of simple rape was error as opposed to trial strategy.  The maximum sentencing exposure for a conviction of simple rape was twenty five years, whereas the sentencing

<hr />

[90]Although Williams grouped this claim under counsel's "failure to file post-trial motions", the failure to object pre-trial to the responsive verdict does not appear to involve any post-trial motion. The court has considered the claim, however, in the order asserted by Williams.

44

exposure for a conviction of forcible rape was 40 years.[91] Counsel may very well have reasoned that, if faced with a decision between forcible rape and a not guilty verdict, the jury may have opted for a guilty verdict even if the evidence of the degree of force used during the rape was not overly compelling. Counsel may have strategically decided that allowing the jury the option of a compromise verdict of simple rape would benefit the defendant because it would reduce the sentencing exposure for his crime.[92] Considering that the Louisiana Fifth Circuit Court of Appeal did, in fact, find sufficient evidence to sustain a conviction of forcible rape, see State v. Williams, 926 So.2d at 672, Williams cannot show that such a strategy was unsound. Counsel's conduct, therefore, cannot be proven to be deficient. Thus, Williams fails to show that the state court decision rejecting his ineffective assistance of counsel claim based upon counsel's failure to object to the inclusion of simple rape as a responsive verdict was contrary to Strickland.

Williams also argues that Attorney Martin Reagan, who signed onto the record as counsel just before Williams was sentenced, failed to file a motion for reconsideration of sentence. Such a failure, Williams argues, barred an appellate court from considering "all possible sentencing issues."[93] Williams also elaborates that when Attorney Reagan failed to appear for sentencing, Attorneys Owen and LeBlanc, who had represented Williams at trial, were not allowed to withdraw from the case and were ordered to represent Williams at his sentencing.  Williams claims that

_____

[91]Compare La. R.S. 42.1 (Forcible rape)  with La. R.S. 43 (Simple rape).

[92]Williams was, in fact, sentenced to 15 years for his conviction of simple rape.

[93]Fed. Doc. 1-2 at p. 39 of 51.

45

Attorneys Owen and LeBlanc were not prepared for his sentencing and thus failed to put on any mitigating evidence or witnesses on his behalf.

A defense counsel's failure to engage in an appropriate investigation of potential mitigating evidence in the punishment phase can support a claim of ineffective assistance of counsel. Williams, 529 U.S. at 390 (noting that such a claim is governed by the Strickland test). However, even if is it assumed, arguendo, that counsel performed deficiently, Williams would need show that he was prejudiced by his counsel's failure to present such mitigating information. Strickland, 466 U.S. at 694.

The record shows that, Attorney Owens argued at sentencing that there were many "iffy factual issues in the case", including the lack of DNA evidence that could have pointed to Williams as the perpetrator of the subject rape, and the fact that both parties admitted to some degree of intoxication and/or liquor consumption on the night of the crime.[94] Counsel asked the sentencing judge if she had read the PSI, and the judge replied that she had.[95] Counsel then went on to emphasize that the court was already aware of Williams' education background, and his life history. Counsel stated, "He's got a good family. He comes from a good home.  He doesn't have a real record. This is not somebody that is what you call a hard person or a bad person or a hard case.  And I would say that I think he's a candidate for the most leniency that you can give under this statute, Your Honor."  The trial judge then indicated that she had read the PSI, had sat through the trial and heard the evidence that was presented.  Having considered all of that information and the guidelines

---

[94]State Rec. vol. 3, Sentencing transcript dated 4/18/2005 at p. 12-13.

[95]State Rec. vol. 3, Sentencing transcript dated 4/18/2005 at pp. 13.

provided for sentencing under state law, the court found that a fifteen year sentence was appropriate.[96]

Here, Williams has failed to set forth the existence of even one shred of mitigating evidence that was not already considered by the trial judge which could have resulted in a more lenient sentence. Although the issue was addressed by the state appellate court in a limited manner due to counsel's failure to file a motion to reconsider sentence,[97]   Strickland requires petitioner to demonstrate prejudice as a result of counsel's error. Williams, however, fails to show that Attorneys Owen and LeBlanc could have obtained a more favorable sentence because he cannot show that they neglected to bring any "mitigation" evidence to the court's attention.  Moreover, without such a showing, Williams cannot demonstrate that Attorney Reagan's failure to seek a motion to reconsider his sentence was prejudicial.  The state court's decision to deny relief on his ineffective assistance claim is not clearly contrary to Supreme Court law.

### 5. Failure to appeal pre-trial evidentiary ruling

Petitioner's last ineffective assistance challenge pertains to his appellate counsel. Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. See Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The standards applicable to William's claims of ineffectiveness against trial counsel apply equally to the charges leveled against his appellate lawyer.

---

[96]State Rec. vol. 3, Sentencing transcript dated 4/18/2005 at pp. 14.

[97]The state appellate court found that Williams' sentence was not constitutionally excessive. Noting that the defendant was 24 years old at the time of the crime and that this was petitioner's first felony, the court also noted that petitioner had a 2003 misdemeanor conviction for "assault causes bodily harm". The court thus found the sentence imposed, being in the mid-range of a possible 25 year sentencing exposure, was not excessive. State v. Williams, 926 So.2d at 673-75.

See Strickland, 466 U.S. at 697; Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1998). On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998), citing Evitts, 469 U.S. 387, 394 (1985). When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims.  Smith v. Robbins, 528 U.S. 259, 288 (2000).  Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Smith, 528 U.S. at 288; Jones v. Barnes, 463 U.S. 745, 754 (1983). Williams must fulfill the Strickland requirements by showing that his counsel was unreasonably deficient and that his defense was prejudiced by that deficiency. See Smith, 528 U.S. at 285.   Williams cannot meet this demanding test.

Williams argues that appellate counsel failed to raise the claim on appeal that the pubic hair recovered from the victim (but which was lost) should never have been allowed to be "presented" as evidence at trial. Williams asserts that, despite the fact that the pubic hair was lost and thus was never tested, "the state was permitted to introduce this evidence at trial and argue that it conclusively matched Casey Williams."[98]   Williams asserts that appellate counsel thus failed to provide constitutionally adequate representation when he failed to appeal the "evidentiary admission" of the pubic hair.

Petitioner raised this argument in post-conviction proceedings in the state court. The Louisiana Fifth Circuit Court of Appeal, found that petitioner had not established that such evidence

---

[98]Fed. Doc. 1-2 at p. 40-41.

was ever "introduced" nor that the State had claimed the untested sample of pubic hair was consistent with one taken from the defendant. The court noted that the pubic hair was lost, the jury was informed that it was missing, and the hair had never been connected to the defendant or to anyone else. The Fifth Circuit concluded, therefore, that the pubic hair was neither inculpatory nor exculpatory.  The court also found that, since there was other evidence to support the victim's account that Williams had raped her, any possible error in mentioning the "missing" evidence to the jury was harmless.  Thus the court concluded that petitioner had not shown appellate counsel's failure to appeal the issue amounted to ineffective assistance.[99]

     This court likewise concludes that petitioner's argument is simply not supported by the record.  First, there was never an "admission" of evidence with regard to the pubic hair, as the hair itself was lost and could never be tested.  The only evidence provided to the jury was in the form of the testimony of Dr. Kathryn Wild, who reported that she had removed a pubic hair from the victim during the course of the rape examination she conducted. Since the victim's genital area was clean shaven, the jury could have, at most, surmised that the pubic hair was present because a rape and/or penetration had occurred. However, since the pubic hair was lost, a match between Williams and the pubic hair was never established nor was the state able to argue to the jury, as petitioner contends, that such a match had "conclusively" been made.[100]  Williams cannot establish that the

---

[99]See State Rec. vol. 3 at Tab 12 for a copy of the Fifth Circuit's opinion.

[100]The court has specifically reviewed the pages cited by Williams' counsel as well as has reviewed the entire trial transcript. At no point was it argued to the jury that the pubic hair could be linked to the defendant.

mere mention of the missing pubic hair to the jury by a state's witness was sufficient to render the jury verdict unreliable. Thus, appellate counsel's decision not to assert such a weak issue on appeal cannot form the basis of an ineffective assistance of counsel claim.

Moreover, without a showing of actual prejudice, the decision as to what issues should be raised on direct appeal fall under strategy decisions best made by appellate counsel. Williams cannot establish that the state court's decision to deny this claim of ineffective assistance of appellate counsel was clearly contrary to Supreme Court law and therefore, is not entitled to relief on this claim.

### D. Denial of Due Process/ Right to Post-Conviction DNA Testing

Williams final claim before this court is that he was denied his right to Due Process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, when he was denied the right to post-conviction DNA testing under La. C. Cr.P. art. 926.1.

Williams raised his claim that he was entitled to DNA testing in his state post-conviction proceedings. The trial court determined that, pursuant to La. C. Cr. P. art. 926.1, DNA testing is permitted of an "unknown sample" if certain requirements are met. An "unknown sample" is defined by La. C. Cr. P. art. 924 (4) as "a biological sample from an unknown donor constituting evidence of the commission of an offense or tending to prove the identity of the perpetrator of an offense." The trial court found that there was no "unknown sample" in petitioner's case upon which DNA testing could be performed.[101] The Louisiana Fifth Circuit Court of Appeal found that the trial

---

[101]28 U.S.C. § 2254(e) requires that the factual determinations of the state court "shall be presumed to be correct" by a federal habeas court.

court did not err in applying La. C. Cr. P. art. 926.1 to Williams case.[102]  Specifically, the court

found:

> The trial court found that petitioner's claim lacked merit because
> there was no "unknown sample" in this case.  In this case, contrary
> to relator's contention, the record reveals that the biological sample
> collected from the victim's vagina was tested (footnote omitted).
> State v. Williams, 926 So.2d at 671.  The test revealed no "seminal
> fluid or spermatozoa".  Id.
>
> Although relator herein alleges that the absence of DNA proves that
> there was no rape, he is incorrect.  Under Louisiana law, for a rape to
> occur, no emission is necessary and "any sexual penetration, . . . ,
> however slight, is sufficient to complete the crime.  Furthermore, the
> lack of evidence does not lead to the identity of another perpetrator.
>
> Relator also asserts that "proper testing" should be performed.
> However, La.C.Cr. P. art. 926.1(E) states that: "Relief under this
> article shall not be granted solely because there is evidence currently
> available for DNA testing but the testing was not available or was not
> done at the time of the conviction." In sum, relator has not presented
> any basis for this court to vacate the trial court's ruling on this issue.

First and foremost, insofar as petitioner challenges the correctness of the state court's

application of the state rules governing DNA testing before this court, it has been uniformly held

that "it is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions."  Estelle v. McGuire, 502 U.S.  62, 67-68 (1991). A federal court conducting

habeas review is limited to determining whether a petitioner's custody is in violation of the

Constitution, laws, or treaties of the United States.  See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68;

Engle v. Isaac, 456 U.S. 107, 119 (1982). See also Hansbro v. Cain, Civ. Action No. 04-2284, 2006

---

[102]State Rec. vol. 3 at Tab 12, Williams v. Copes, Writ No. 08-WR-1232 (La. App. 5th Cir.
11/10/2010)(unpublished) at p. 14.

WL 3488729, at *7 (W.D.La. Oct. 20, 2006) (Hornsby, M.J.) ("This court is not concerned with

whether the state courts properly applied Article 926.1 because federal habeas relief does not lie for

errors of state law.")(adopted by Stagg, J., on Dec. 1, 2006), certificate of appealability denied, No.

07-30007 (5ᵗʰ Cir. May 9, 2008).  Accordingly, this court cannot review the correctness of the state

court's determination regarding the application of La. C. Cr. P. art. 926.1 to petitioner's request for

DNA testing.

Additionally, Williams' challenge is to the state court's post-conviction determination that

he is not entitled to post-conviction DNA testing.  As a general rule, "[i]nfirmities in state habeas

proceedings do not constitute grounds for federal habeas relief." Moore v. Dretke, 369 F.3d 844, 846

(5ᵗʰ Cir. 2004); Henderson v. Cockrell, 333 F.3d 592, 606 (5th Cir.), cert. denied, 540 U.S. 1163, 124

S.Ct. 1170, 157 L.Ed.2d 1208 (2004); Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir.1999);

Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir.1997).; Duff-Smith v. Collins, 973 F.2d 1175,

1182 (5th Cir.1992).  This is because "an attack on the state habeas proceeding is an attack on a

proceeding collateral to the detention and not the detention itself." Rudd v. Johnson, 256 F.3d 317,

320 (5th Cir.2001).

Also, to the extent Williams argues that the Constitution demands that he be granted

additional post-conviction DNA testing, such a claim has been foreclosed by the U.S. Supreme

Court's decision in  District Attorney's Office for Third Judicial District v. Osborne, 557 U.S. 52

(2009).  In that case, the Supreme Court held that there was no free-standing federal constitutional

right to obtain post-conviction access to the state's evidence for DNA testing.  Id. at 72. See also,

McElhaney v. McKee, No. 1:06-CV-900, 2007 WL 851664, at *1 (W.D. Mich. Mar. 16, 2007);

Penley v. Director, TDCJ-CID, Civ. Action No. 4:03cv301, 2006 WL 2504902, at *6 (E.D. Tex.

July 11, 2006) (Bush, M.J.), adopted, 2006 WL 2505174 (E.D. Tex. Aug. 28, 2006) (Schell, J.);

Lang v. Dretke, No. 3:05-CV-1499-L, 2005 WL 2219234, at *2 n.2 (N.D. Tex. Sept. 8, 2005)

(Sanderson, M.J.) (adopted on Sept. 29, 2005, by Lindsay, J.); Figueroa v. Dretke, Civ. Action No.

4:05CV074Y, 2005 WL 1108109, at *1 (N.D. Tex. May 5, 2005) (Bleil, M.J.), adopted, 2005 WL

1320143 (N.D. Tex. June 1, 2005) (Means, J.); Shenouda v. Breslin, No. 03 CV 5767, 2004 WL

1918805, at *6 (E.D.N.Y. Aug. 27, 2004).

Moreover, Williams cannot show that additional DNA testing would vindicate him and

establish that he is innocent.  At trial, the victim testified that Williams put a condom on before the

sexual assault.[103] Thus, if additional DNA testing was conducted, the lack of DNA able to be linked

to Williams would not undermine the jury's conclusion that a rape had occurred.  Additionally, this

was not a case where the defendant attempted to establish a mistake in identity and/or that another

individual had raped the victim.  In fact, in closing argument, defense counsel conceded that the

victim and Williams had been together in defendant's truck on the night in question and that they

had an argument.  Defense counsel, however, argued that Williams had not had sexual intercourse

with the victim.[104] Thus additional DNA testing to determine if a third party was responsible for the

---

[103]State Rec. vol. 5 at pp. 487-88.

[104]State Rec. vol. 6 at pp. 739-743.  Additionally the State established through a barrette of
the victim's left in defendant's car that the two had been together on the night of the crime. See State
Rec. vol. 6 at 509.

rape would be unnecessary.[105] Finally, Williams would, of course, only be further implicated  if additional DNA testing yielded DNA that came from him.  Thus, additional post-conviction DNA testing would be futile and any results from such testing would not have altered the outcome of Williams' trial.  As the Court stated in Osborne, "DNA testing alone does not always resolve a case. Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent."  Id. at 52.

Finally, insofar as Williams may be asserting a claim of "actual innocence", Williams cannot point to any U.S. Supreme Court decision which allows a free-standing claim of actual innocence to be pursued through habeas corpus.[106]  He therefore cannot show that the state court's denial of his actual innocence claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". See 28 U.S.C. §2254(d).  In Herrera v. Collins, 506 U.S. 390, 400 (1993), a capital case, the U.S. Supreme Court recognized that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Moreover, the Court noted, even in an

---

[105]To the extent Williams argues that some form of "residual DNA" from the missing public hair could be found, the claim is speculative at best.  Moreover, the testimony regarding the pubic hair was not material in that it never was tested and could not link Williams to the crime. Also, without the pubic hair itself being tested, Williams would be hard-pressed to show that any "residual DNA" came from that pubic hair.

[106] The recent decision in McQuiggin reaffirms that the U.S. Supreme Court has never held that a prisoner is entitled to habeas relief based upon a free-standing claim of actual innocence.  See 2013 WL 2300806 at *7. The McQuiggin case was limited to deciding that a strong showing of actual innocence may, for a "severely confined category" of cases, provide an exception to the one year statute of limitations. Id. at *11.

extraordinary (capital) case where a "truly persuasive demonstration of "actual innocence" had been made, the threshold showing for such an assumed right would be "extraordinarily high."  Id. at 417. Petitioner's case is not such a case and his actual innocence claim must fail. Accordingly,

**RECOMMENDATION**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for federal *habeas corpus* relief filed by Casey Williams be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted  by  the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc). [107]

New Orleans, Louisiana, this fourteenth day of June, 2013.



SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

---

[107]*Douglas* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.